UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ROHAN BROWN,

                      Petitioner,

              v.

DANIEL MARTUSCELLO,

                      Respondent.

----------------------------------------------------------------x

**MEMORANDUM & ORDER**

12-CV-0054 (PKC)

PAMELA K. CHEN, United States District Judge:

      Rohan Brown ("Petitioner"), appearing *pro se*, seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his 2007 judgment convicting him of multiple counts of firearms and narcotics possession and distribution.  For the reasons set forth below, Petitioner's writ of habeas corpus is denied.

BACKGROUND

I.    Relevant Factual and Procedural History

    A.  The Arrest and Indictment

      From April 12, 2005 to July18, 2005, Petitioner was the subject of an undercover operation entitled "Hard Rock," relating to Petitioner's involvement in firearms and narcotics trafficking.  (Dkt. 10-2 at 5-6)  On October 8, 2005, at the conclusion of the investigation, Petitioner was arrested and indicted on two Counts of Criminal Sale of a Controlled Substance in the Second Degree (New York Penal Law §220.41[1]), eight counts of Criminal Sale of a Firearm in the Third Degree (New York Penal Law §265.11[1]), eight counts of Criminal Possession of a Weapon in the Third Degree (New York Penal Law §265.02[4]), and two counts

of Criminal Possession of a Weapon in the Third Degree (New York Penal Law §265.02[7])

(Dkt. 9 at 3).

    B.  <u>The Trial, Verdict, and Sentencing</u>

    On March 5, 2007, Petitioner's jury trial commenced. (Dkt. 10-3 at 168). According to

the evidence presented, Petitioner sold firearms and/or cocaine on nine different dates to New

York City Police Department ("NYPD") undercover officers ("UCs"). (Dkt. 9 at 2-3). On each

of these occasions, Detective Jean-Baptiste ("Det. Baptiste"), acting as the "ghost" officer,

followed the UCs to the locations where the sales took place, and observed Petitioner enter the

UCs' vehicles, engage them in conversation, and then exit the vehicles. (Dkt. 10-2 at 7-8). Det.

Baptiste testified that at the end of the initial sale on April 12, 2005, he met with UC 7988 and

retrieved from him a firearm purchased from Petitioner. (Dkt. 10-5 at 396). Det. Baptiste stated

on direct examination that he placed UC 7988's shield number on this firearm, but

acknowledged at trial that he could not see the shield number on the gun. *Id*. at 399-402. On

April 22, 2005, while again acting as a "ghost," Det. Baptiste videotaped Petitioner walking to

and from UC 7988's vehicle, using a personal camcorder. *Id*. at 403-405. This surveillance

videotape, which portrayed a "tall black man entering and leaving a dark-colored car," was

entered into evidence over defense counsel's objection. *Id*.

    During summations, defense counsel made several remarks suggesting that the

prosecution and detectives had lied and that Petitioner had been "set up" because they "had to

peg [the alleged crimes] on somebody." (Dkt. 10-5 at 513-521). Thereafter, the prosecution

used their summation to stress that: (1) Petitioner was running an illegal gun and drug

distribution "business;" (2) the prosecution had no motive to frame or "setup" Petitioner; and (3)

the jury should not be distracted from Petitioner's guilt by the defense's arguments. *Id*. at 523-531.

The jury found Petitioner guilty on all 20 counts of the indictment. (Dkt. 10-5 at 554-561). On March 29, 2007, Petitioner was sentenced, in total, to a determinate term of 12-years and a consecutive indeterminate term of 2-1/3 to 7 years. (Dkt. 10-2 at 8-9).[1]

C.  Direct Appeal

On June 27, 2008, Petitioner appealed his conviction to the Appellate Division, Second Department ("Appellate Division"), through appointed counsel, on the ground that the prosecution's remarks during summation "invited the jury to rely on improper considerations" and constituted prosecutorial misconduct. *People v. Brown*, 874 N.Y.S.2d 825 (2d Dept. 2009). On March 24, 2009, the Appellate Division affirmed Petitioner's conviction, holding that: (1) Petitioner's claim had not been preserved for appellate review in the trial court; and (2) the claim was without merit because the challenged comments were both fair and harmless comment on the evidence or were in response to defense arguments. *Id*. On April 6, 2009, Petitioner sought leave to appeal this decision. On June 10, 2009, the New York Court of Appeals denied the application. (Dkt. 10).

Petitioner's conviction became final 90 days later, on September 10, 2009, when time expired for Petitioner to seek a writ of certiorari from the United States Supreme Court. 28 U.S.C. § 2244(d)(1)(A); *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) ("[A] petitioner's conviction bec[omes] final for [AEDPA] purposes when his time to seek direct review in the

---

[1] Petitioner received consecutive sentences for three counts of conviction, two of which were for determinate terms of six years and one of which was for an indeterminate term of 2-1/3 to 7 years. Petitioner was sentenced to concurrent determinate and indeterminate terms on the other 17 counts of conviction, of either three years or 2-1/3 to 7 years. *Id.*

United States Supreme Court by writ of certiorari expire[s].") (internal quotations omitted); S. Ct. R. 13(1) (establishing ninety-day period for filing petitioner for writ of certiorari).

D.   Petitioner's First Application for a Writ of Error Coram Nobis

On July 28, 2009, Petitioner filed an application for a writ of error coram nobis ("First Coram Nobis Application") in the Appellate Division, Second Department, alleging ineffective assistance of his appellate counsel.  Specifically, Petitioner alleged that his appellate counsel should have appealed his conviction on Count Three of the indictment (criminal possession of a weapon in the third degree) on the basis that the prosecution failed to prove that the firearm admitted into evidence was the same firearm sold to UC 7988 on April 12, 2005.   (Dkt. 10 at 3).  In support of his claim, Petitioner relied on Det. Baptiste's conflicting testimony at trial where he first testified that he etched the agent's number onto the firearm but later admitted that he was unable to see the numbers on the gun.  *Id.* at 2-3.

Petitioner's appellate counsel filed a response defending her decision not to raise the issue on the grounds that: (1) the prosecution appropriately established a chain of custody for the firearm; and (2) raising the issue would not have lowered Petitioner's sentence, and for this reason, would not have been beneficial.  *Id.* at 3.

In an order dated January 12, 2010, the Second Department denied Petitioner's First Coram Nobis Application for failure "to establish that [Petitioner] was denied the effective assistance of appellate counsel."  *People v. Brown*, 69 A.D.3d 750 (2d Dept. 2010).

On April 22, 2010, the Court of Appeals denied Petitioner's application for leave to appeal.  *People v. Brown*, 901 N.Y.2d 145 (2010).

E.   State Collateral Attack - § 440 Motion to Vacate Conviction

On or about May 14, 2010, Petitioner filed a *pro se* motion in New York Supreme Court (Queens County) to vacate his judgment pursuant to New York Criminal Procedure Law

4

("N.Y.C.P.L.") § 440.10 ("First 440 Motion") on the following grounds: (a) he was denied the effective assistance of trial counsel based on counsel's failure to object to improper conduct by the prosecution, which Petitioner also challenged as separate bases in his motion; (b) evidence was introduced in violation of his state and federal constitutional rights; (c) the prosecution committed eavesdropping and surveillance violations, pursuant to N.Y.C.P.L. § 700; (d) the prosecution failed to serve notice of its intent to use the surveillance videotape as evidence at trial, in violation of  N.Y.C.P.L. § 710.30; and (d) the prosecution failed to disclose the videotapes before trial, in violation of N.Y.C.P.L. § 240.20 and *People v. Rosario.*  (Dkt. 9 at ECF 6-7; Dkt. 10 at ECF 105-119; Dkt. 10-1 at ECF 4).[2]

On August 3, 2010, the Queens County Supreme Court denied Petitioner's First 440 Motion on procedural grounds, finding that the trial court record contained sufficient facts to permit adequate review of Petitioner's ineffective assistance claims on direct appeal and that Petitioner's failure to raise those claims on appeal warranted the dismissal of his motion. (Dkt.12 at ECF 8).  In addition, the Court summarily addressed the merits of the First 440 Motion, finding that "the defendant[']s allegations are supported solely by the defendant[']s statement and is unsupported by any other credible evidence and there is no reasonable possibility that the defendant[']s allegations are true."  *Id.* at ECF 9.  Despite being served with notice of the denial of his First 440 Motion, Petitioner did not seek leave to appeal the denial. (Dkt. 9 at ECF 10; Dkt. 10-1 at ECF 20-21).

Rather, on October 18, 2010, Petitioner "submitted for filing a motion for entry of an order disposing [sic] the C.P.L.R. 440.10 motion" ("Second 440 Motion") (Dkt. 10-1 at ECF 20;

---

[2]  Citations to "ECF" reference the pagination of the Electronic Court Filing system, and not the document's internal pagination.

Dkt. 12 at ECF 3).[3] On November 29, 2010, the Queens Supreme Court denied this motion (Dkt. 10-1 at ECF 21; Dkt. 12 at ECF 10).

F.  Petitioner's Second Application for a Writ of Error Coram Nobis

On or about February 12, 2011, Petitioner filed a second application for a writ of error coram nobis ("Second Coram Nobis Application"), in which he argued his appellate counsel provided ineffective assistance by failing to argue that: (1) the surveillance videotape taken by Det. Baptiste infringed upon his right to privacy because he did not consent to the surveillance and no warrant was secured prior to the videotaping; (2) the prosecution failed to disclose the videotape prior to trial, constituting a *Rosario* violation; and (3) trial counsel was ineffective for failing to move to suppress Det. Baptiste's testimony regarding the surveillance videotape. (Dkt. 10-1 at ECF 39-45). On June 28, 2011, the Appellate Division denied Petitioner's Second Coram Nobis Application, finding that he had failed to establish ineffective assistance of his appellate and trial counsel. (Dkt. 10-1 at ECF 71). Petitioner applied for leave to appeal to the Court of Appeals on July 21, 2011. (Dkt. 10-1 at ECF 72).

On September 19, 2011, the Court of Appeals denied Petitioner's request for leave to appeal the denial of his Second Coram Nobis Application. *People v. Brown*, 17 N.Y.3d 857 (2011).

G.  Instant Petition for Writ of Habeas Corpus

On January 3, 2012, Petitioner filed the instant Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254, asking this Court to vacate his convictions and sentence. (Dkt. 1). The petition, liberally construed, re-asserts the claims from Petitioner's direct appeal of his judgment of conviction and his collateral attacks upon that judgment, namely: (1) prosecutorial

---

[3] Petitioner filed this submission apparently based on the erroneous belief that the court's "memorandum of law" did not constitute an official order, which could later be appealed. *Id.*

misconduct; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. *Id*. These claims are based on the same grounds set forth in his direct appeal, 440 Motions, and his Second Writ of Error Coram Nobis. As discussed below, because 641 days between Petitioner's conviction becoming final and the filing of the instant petition were tolled, Petitioner's application was filed 177 days after September 10, 2009, thus rendering the instant Petition timely for the purposes of AEDPA.

DISCUSSION

I.    Standard of Review

A.    Antiterrorism and Effective Death Penalty Act ("AEDPA")

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner who believes he is being held in state custody in violation of his constitutional rights may seek relief in federal court. 28 U.S.C. § 2254(a). However, the statute does not empower a federal court to grant habeas relief unless the prisoner's claims were adjudicated on the merits in a State court, and the court proceedings: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Moreover, under AEDPA, there are various procedural requirements that must be satisfied before the Petitioner's habeas application may be granted.

B.    Timeliness

Under AEDPA, there is a one-year statute of limitations period in which a prisoner must file a writ of habeas corpus. 28 U.S.C. § 2254(d)(1). According to the statute, the one-year period runs from the latest of either:

7

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2254.

Under subsection (A), the applicable provision here, Petitioner's one-year period began running on September 10, 2009, which was when he was no longer able to seek review of his direct appeal from the United States Supreme Court.  Petitioner therefore had until September 10, 2010 to file a habeas application.  However, Petitioner's application was filed on December 6, 2011—818 days after the clock began running.[4]  Section 2244 has a tolling provision, which provides that "[t]he time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is *pending* shall not be counted toward any period or limitation under this subsection."[5]  28 U.S.C. § 2244(d)(2). Accordingly, the one-year clock stops running when a properly filed state post-conviction or

---

[4] Here, pursuant to the *mailbox rule*, which this circuit adheres to, Petitioner's *pro se* status allows federal courts to consider his habeas application filed on December, 6, 2011, the date when he placed his application in the prison mail system, rather than on January, 3, 2012, which is the date when it was received by the court clerk's office.  *Fernandez v. Artuz*, 402 F.3d 111, 113 (2d Cir. 2005); *Noble v. Kelly,* 246 F.3d 93, 97-98 (2d Cir. 2001).

[5] An application for state post-conviction or other collateral review is considered "properly filed" for tolling purposes under AEDPA when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, even if the motion contained claims that were procedurally barred under New York Law.  *Artuz v. Bennet*, 531 U.S. 4 (2000).  Furthermore, pursuant to *Bennett v. Artuz*, "a state-court petition [for post-conviction or other collateral review] is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures.'" 199 F.3d 116, 120  (2d Cir. 1999).

other collateral review of the original judgment, such as a § 440 motion or coram nobis application, is pending.  Here, the one-year limitations period was tolled during the pendency of: (1) Petitioner's First Writ of Error Coram Nobis, from September 10, 2009 until April 22, 2010, when the Court of Appeals denied Petitioner's application and no further appellate review was available (224 days); (2) Petitioner's First and Second 440 Motions,[6] from May 14 2010 until November 29, 2010, when the Second 440 Motion was denied (199 days); and (3) Petitioner's Second Coram Nobis Application, from February 13, 2011 until September 19, 2011, when the Court of Appeals denied leave to appeal the denial of the application (218 days calculated). Therefore, the total amount of time that is subject to exclusion, from the period when Petitioner's conviction became final to the time when the instant petition was filed, is 641 days. The amount of untolled time attributable to Petitioner for purposes of the AEDPA one-year time limit is thus 177 days, which falls within the statutory limit.  Petitioner's habeas application is, therefore, timely.

     C.  <u>Exhaustion</u>

     In addition, under 28 U.S.C. § 2254(b), someone seeking federal habeas review must either have exhausted all of his or her remedies in state court for each federal claim, or show that there are no state corrective processes available to resolve the claim.  28 U.S.C. § 2254(b). According to the Supreme Court's ruling in *Coleman v. Thompson*, this requirement is " . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Furthermore, in *Picard v. O'Connor,* the Supreme Court held that the exhaustion requirements are satisfied when: (1) the grounds the applicant asserts have been

---

[6] Although the Second 440 Motion arguably was not "properly filed," the Court liberally construes the filing of this motion as tolling the AEDPA limitations period.

"fairly presented" in the state court system and (2) the applicant has gone through all available avenues of appellate review within the state court system before bringing his or her claims to federal court.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).

    D.  Procedural Bar

Finally, in order to grant habeas relief to an applicant, AEDPA requires that none of the claims be procedurally barred.  *Coleman,* 501 U.S. at 724.  Pursuant to *Coleman*, federal courts are barred from reviewing a state court's decision to deny a prisoner's federal constitutional claim so long as that decision is based on a state procedural ground that is "independent of the federal question and adequate to support the prisoner's continued custody." *Coleman*, 501 U.S. at 724.  In *Harris v. Reed*, the Supreme Court held that the state procedural ground must be "expressly and adequately stated" by the last state court rendering judgment on the matter. *Harris v. Reed*, 489 U.S. 255, 256 (1989).  Where the district court finds that the state court's decision rests on an independent and adequate state procedural ground, the burden of proof shifts to the petitioner to show "cause" for the procedural default and "actual prejudice" thereof, or to show that "failure to consider the claims will result in a "fundamental miscarriage of justice." *Id*. Absent such a showing, the district court is barred from reviewing the petitioner's claim.  *Id*.

II.    Proffered Grounds for Habeas Relief

    A.  Prosecutorial Misconduct (Ground 1)

The first ground on which Petitioner seeks habeas relief is prosecutorial misconduct. Petitioner claims, as he did on direct appeal, that he was deprived of his due process right to a fair trial when, during summations, the Prosecution accused him of running a "business," argued that the police had no motive to "frame" him, and warned jurors that defense counsel was trying to distract them from Petitioner's unquestionable guilt.  (Dkt. 1 at 12). This claim, though properly exhausted, is procedurally barred from habeas review.  On direct appeal, the Appellate

Division affirmed Petitioner's conviction, holding that because Petitioner failed to object to any of the prosecution's comments at trial, Petitioner's claim was not preserved for appellate review. *Brown*, 874 N.Y.S.2d at 826 (citing N.Y.C.P.L. *§* 470.05(2)).   Because the Appellate Division's decision is expressly based on a state procedural rule, it constitutes an independent and adequate ground that bars federal habeas relief.  *Harris*, 489 U.S. at 265 (court held that "clearly and expressly stated" requirement is satisfied by plain statement setting out procedural bar).

The fact that the Appellate Division also "reached the merits" of Petitioner's claim, by finding that the challenged remarks were fair comments on the evidence does not waive the procedural bar.  *Brown*, 874 N.Y.2d at 826.  In *Glenn v. Bartlett*, the Second Circuit held that a procedural bar is not waived merely because the state court addressed the merits of a federal claim, so long as, in making its ruling, the court primarily relied on the independent and adequate state ground.  *See Glenn v. Bartlett* , 98 F.3d 721, 724-25 (2d Cir. 1996).  In this case, the fact that the Appellate Division addressed the procedural deficiency first, and only afterwards addressed the merits as an additional basis for denying Petitioner's appeal, is sufficient to conclude that the default was the primary basis for rejecting Petitioner's claim.[7]  Accordingly, federal review of Petitioner's claim is foreclosed unless Petitioner can establish "cause and prejudice" for the default or show that a miscarriage of justice will occur absent review. *Coleman*, 501 U.S. at 750.

Petitioner has failed to establish sufficient cause for his default.  Under the cause and prejudice standard, Petitioner must show that "some objective factor external to the defense

---

[7] The Appellate Division held, specifically, that Petitioner's " . . . argument [was] not preserved for appellate review because the defendant either failed to make specific and timely objections, or failed to seek curative instructions or move for a mistrial. In any event, the challenged remarks constituted fair comment on the evidence, were responsive to arguments presented in the defense counsel's summation, or were harmless." *Brown*, 874 N.Y.S.2d at 826.

11

impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753; *see also Murray v. Carrier*, 477 U.S. 478, 479 (1986).  Petitioner cites his trial attorney's failure to object to the prosecution's comments as cause for his procedural default.  (Dkt. 10 at ECF 19).

Attorney error can constitute cause in instances where a separate claim of ineffective assistance of counsel, based on the alleged error, has been brought in state court. *See Coleman*, 501 U.S. at 725; *see also Murray*, 477 U.S. at 488-89 (Supreme Court held, pursuant to exhaustion doctrine, a claim of ineffective assistance must be presented to state courts as an independent claim before it may be used to establish cause for a procedural default).  The ineffective assistance claim must be exhausted like any other federal constitutional claim, even if it is being raised only to establish cause to excuse a procedural default. *See Murray,* 477 U.S. at 488-91.

Here, although Petitioner presented multiple claims of ineffective assistance of his trial counsel in state court, none of those claims included the ground alleged here, *i.e.*, trial counsel's failure to object to the prosecution's closing argument.  At most, Petitioner's appellate brief contained a single reference, without any support or analysis, to trial counsel being ineffective for not objecting to the prosecution's comments during closing.  (Dkt. 10 at ECF 19).  This is insufficient to establish cause for Petitioner's procedural default.[8]

In any event, Petitioner cannot show he suffered prejudice from trial counsel's alleged failure to object to the prosecution's statements.  In *U.S. v. Young*, the Supreme Court noted that the appropriate inquiry when there is a claim of prosecutorial misconduct is not whether the prosecutor's actions were appropriate [or undesirable] but whether " . . . it was 'plain error' that a

---

[8]  This reasoning does not apply to Petitioner's other claims of ineffective assistance by his trial counsel, which Petitioner raised in his 440 Motions and Coram Nobis applications.

reviewing court could act on absent a timely objection." *U.S. v. Young*, 470 U.S. 1, 6 (1985); s*ee also Darden v. Wainwright,* 477 U.S. 168, 181 (1986).  The Court must consider "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.  Furthermore, in evaluating the propriety of the prosecution's remarks, the Court considers such things as whether the comments manipulated or misstated the evidence; whether they implicated other rights of Petitioner; whether the statements made were invited by Petitioner; how heavily the evidence weighed against Petitioner; and what, if any, opportunity Petitioner had to address or counter the prosecutor's allegedly improper comments. *Id.* at 182-83; *see also Young*, 470 U.S. at 13; *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974).

In the instant case, the prosecutor's statements plainly did not "undermine the fundamental fairness of the trial [or] contribute to a miscarriage of justice." *Young,* 470 U.S. at 16.  Petitioner contends that during trial the government invited the jury to rely on improper considerations when they: (1) repeatedly accused him of running a criminal business; (2) warned the jury that defense counsel was trying to "distract" them from Petitioner's unquestionable guilt; and (3) argued that the police had no motive to frame Petitioner.  (Dkt. 1-3 at ECF 10).  However, these comments were made in response to Petitioner's summation and were fair.

First, the prosecutor's characterization of Petitioner's gun and drug dealing activities as a "business" was accurate and patently non-inflammatory.  Indeed, the evidence introduced at trial established that Petitioner sold UC 7988 loaded guns and large quantities of cocaine on nine separate dates over a three-month period.  (Dkt. 10-2 at 5-6).

Second, in his summation, Petitioner's trial counsel, in fact, sought to distract the jury from the evidence of Petitioner's guilt.  Trial counsel brought up the police's failure to

13

investigate two cars that Petitioner was observed standing next to during one of the illegal transactions and that contained individuals to whom Petitioner was speaking.  (Dkt 10-5 at ECF 127).  Petitioner's trial counsel argued that the police should have determined whether those cars were stolen and that the police should have performed a separate investigation to determine if drugs or guns were being sold from those cars.  *Id*.  He also referenced the fact that the prosecution was unable to explain how the cellphone exchanges between UC 7988 and Petitioner began, since the record contained no evidence on the matter.  (Dkt. 10-5 at ECF 127).  Lastly, Petitioner's counsel brought to light the fact that the identity of the informant who initiated the case had never been disclosed.  *Id*; Dkt. 10-4 at ECF 44.  In light of the fact that Petitioner's attorney sought to draw attention away from the prosecution's core evidence regarding the drug and gun transactions between Petitioner and the undercover officer, the prosecutor was entitled to respond and argue (as she did) that the comments made by Petitioner's attorney during summation were an attempt to distract the jury and were irrelevant.

Third, although Petitioner contends that his trial counsel never stated or suggested that the police had framed Petitioner, several of the remarks that defense counsel made during his summation unequivocally demonstrate his intent to have the jury believe that the police had framed Petitioner and that Petitioner was the victim of a conspiracy.  For example, defense counsel specifically stated, "[w]as this a set up?  I don't know.  I don't know."  (Dkt. 10-5 at ECF 126).  He also argued, "I am not saying they are lying.  I am just questioning as to whether they know who exactly sold them guns.  And is Mr. Brown a victim here also.  Is he?  Did they turn around and have to peg this on somebody?"  *Id*. at ECF 133-134.  In addition, defense counsel implied that no one saw Petitioner as he walked down the street carrying an AK-47 assault rifle and that the rifle could have already been in the detective's car when Petitioner

entered it.  *Id*. at ECF 125-126.  Defense counsel concluded by arguing that Petitioner would not be able to conceal the weapon, because it was too big, and yet no police officers testified that they saw him carrying it.  *Id.* at ECF 126.  Thus, the prosecutor's comments refuting Petitioner's claim of a police set-up and conspiracy were responsive to Petitioner's summation.

Additionally, in light of the overwhelming evidence of Petitioner's guilt at trial, whatever error may have resulted from the prosecutor's comments was harmless.  The testimony at trial proved that, on nine separate occasions, defendant sold Undercover 7988 various loaded guns and large quantities of cocaine.  (Dkt. 10-4 at ECF 10-29).  Each transaction was face-to-face and took place inside the undercovers' car, where both the undercover and the ghost observed Petitioner.  *Id*. at 34.  Furthermore, each time UC 7988 arranged to meet Petitioner, Petitioner showed up at the agreed-upon time and location, and provided the undercover with the agreed-upon gun and/or drugs.  *Id*. at 10-29.  When the decision was made to end the investigation and arrest Petitioner, UC 7988 contacted Petitioner a final time and made an arrangement to meet.  *Id*. at 33.  Again, Petitioner appeared, met with UC 7988, but on this occasion, he was identified and arrested.  *Id*.  The evidence of Plaintiff's guilt was overwhelming, and negates Petitioner's claim that the prosecutor's actions alone "changed the entire complexion of the case."  (Dkt. 1-3 at ECF 14).  Consequently, because Petitioner's prosecutorial misconduct claim has no merit, he cannot show that a fundamental miscarriage of justice would occur if this Court does not consider it.  *See Coleman*, 501 U.S. at 750.

Accordingly, given the state court's denial of Petitioner's claim regarding the prosecution's statements on procedural grounds, the deference that is owed such decisions, and Petitioner's failure to demonstrate cause to excuse the procedural default, Petitioner's request for habeas relief based on the prosecutor's closing arguments must be denied.

15

B.  Ineffective Assistance of Trial Counsel (Ground 2)

Petitioner next argues his trial counsel provided ineffective assistance by failing to move to suppress the surveillance videotape on the bases that (1) it was admitted into evidence in violation of N.Y.C.P.L. § 700, (2) no notice of the videotape was ever given to the defense pursuant to N.Y.C.P.L. § 710.30(1), and (3) the videotape was not provided to the defense pursuant to N.Y.C.P.L. § 240.20.  Petitioner also claims that the prosecution's failure to disclose the videotape constituted a *Rosario* violation.  (Dkt. 1-3 at ECF 16-24; Dkt. 10 at ECF 111-119).  These claims are exhausted, but procedurally barred.

Petitioner raised his ineffective assistance claims regarding his trial counsel in his First 440 Motion, but failed to appeal the decision of the Queens Supreme Court denying them.  (Dkt. 10-1 at ECF 20-21).  Instead, Petitioner filed the Second 440 Motion seeking the same relief.  *Id.*[9]  Ordinarily, the failure to pursue an available avenue of state court review would render a claim unexhausted for purposes of federal habeas review.  28 U.S.C. § 2254(b); *see also Petrucelli v. Coombe*, 735, F.2d 684, 687 (2d Cir. 1984); *Daye v. Attorney General*, 696 F.2d 186, 190 n. 3, 191 (2d Cir. 1982) (en banc).  However, because the time to appeal the denial of his First 440 Motion has expired, Petitioner's ineffective assistance of trial counsel claims are effectively exhausted, but procedurally barred.   N.Y.C.P.L. § 460.10 (a defendant-appellant has 30 days in which to notice his appeal); *see also Harris v. Reed*, 489 U.S. 255, 263 (1989); *Castille v. Peoples*, 489 U.S. 346, 351-51 (1989); *Teague v. Lane*, 489 U.S. 288, 297-99 (1989) (plurality opinion); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *Fay v. Noia*, 372 U.S. 391 (1963) (exhaustion has occurred if the time limit for the direct appeal has expired such that no

---

[9] In the Second 440 Motion, Petitioner incorrectly argued that denying the First 440 Motion effectively precluded his right to seek leave to appeal because the court's decision was "not appealable according to law."  Under New York Law, the denial of a motion to vacate a judgment is appealable.  See N.Y.C.P.L. §§ 450.15(1), 460.15.

16

state remedies are available at the time the habeas petition is filed).  At the same time, these claims are procedurally barred because the state court denied them on procedural grounds. *Harris*, 489 U.S. at 256 (where state court's decision rests on an independent and adequate state procedural ground, federal court review of the decision is barred, unless the petitioner demonstrates "actual prejudice").  Petitioner therefore must demonstrate cause to excuse this procedural default.

Petitioner's status as a *pro se* litigant and his ignorance of the law do not constitute cause. Under *Coleman*, no right to counsel exists in a state post-conviction proceeding.  *See Coleman*, 501 U.S. at 752; *see also Murray v. Giarratano*, 492 U.S. 1 (1989).  It follows, therefore, that Petitioner cannot use his *pro se* status as cause for any procedural default in such proceeding. Petitioner's mistaken belief also cannot constitute cause for his procedural default because it is not an objective factor that is external to his defense.   *See Coleman*, 501 U.S. at 753.  Moreover, Petitioner has failed to establish that a fundamental miscarriage of justice will arise if this Court fails to consider this claim.  *Coleman*, 501 U.S. at 757.  Even if Petitioner had sought leave to appeal the denial of his First 440 Motion, this would not have preserved his ineffective assistance of trial counsel claims because they were not properly raised in the First 440 Motion.

While the general New York rule requires claims of ineffective assistance of trial counsel to be presented to a state trial court via a 440 Motion, s*ee Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994), such claims are properly raised on direct appeal when they pertain to matters sufficiently on the record.  *See People ex rel. Barrett v. Scully,* 203 A.D.2d 311 (2d Dept. 1994). Thus, a court must deny a § 440 motion alleging ineffective assistance of trial counsel when,

> although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or

perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

N.Y.C.P.L. § 440.10(2)(c).  Here, Petitioner's First 440 Motion was denied because he failed to raise his ineffective assistance claims on direct appeal.  In denying the First 440 Motion, the Queens County Supreme Court found that the trial court record contained sufficient facts such that these claims could have been decided on direct appeal.  In fact, the instances of attorney error Petitioner alleged concerned matters sufficiently on the record and thus available for review at the initiation of his direct appeal.  *See Garcia v. Scully*, 907 F. Supp. 700, 706 (S.D.N.Y. 1995); *see also People v. Denham*, 97 A.D.3d 691 (2d Dept. 2012); *People v. Montes*, 265 A.D.2d 195 (1st Dept. 1999).  Thus, seeking leave to appeal the denial of Petitioner's First 440 Motion would not have made his ineffective assistance of trial counsel claims reviewable by this Court.  (Dkt.12 at ECF 8; Dkt. 10-1 at ECF 20-21).

In any event, Petitioner cannot demonstrate prejudice if the Court does not review his claims because they lack merit.  Petitioner's allegations do not establish that his attorney provided him with ineffective assistance of counsel.  Rather, his attorney made a reasonable tactical decision not to move to suppress the surveillance videotape, which was admitted at trial, because such a motion likely would not have succeeded.  First, Det. Baptiste did not need an eavesdropping or video surveillance warrant, pursuant to N.Y.C.P.L. § 700.05, to record Petitioner entering and exiting UC 7988's parked car, because the videotaping occurred exclusively in a public place.  (Dkt. 10-5 at ECF 403-405).  According to N.Y.C.P.L. § 700.05, a video surveillance warrant is not required unless " . . . such observation in the absence of a video surveillance warrant infringes upon [a] person's reasonable expectation of privacy under the constitution of this state or of the United States."  N.Y.C.P.L. § 700.05(9); *see also* N.Y.C.P.L. §

18

700.05(10).  There is no reasonable expectation of privacy in a public place and, consequently, no warrant was needed to videotape Petitioner.  *See People v. Weaver*, 12 N.Y.3d 433, 448, (2009) (New York Court of Appeals noted that police could, without a warrant, follow a suspect everywhere he went, so long as he remained in public places.  He could have been photographed, filmed or recorded on videotape, because when an individual travels on the public streets that person takes the chance that he or she will be observed).

Second, the prosecution was not required to serve pre-trial notice of its intention to introduce the surveillance videotape into evidence.  Pursuant to N.Y.C.P.L. § 710.30, the prosecution is only required to serve Petitioner with pre-trial notice of its intent to use statements he may have made to a public servant (i.e., a police officer), or out of court identifications of him that they planned on introducing at trial.  N.Y.CP.L. § 710.30(a).  Neither of these rules is relevant for the surveillance videotape made here, which contained no statements by Petitioner.[10] (Dkt. 10-5 at ECF 21-22).  Thus, contrary to Petitioner's claim, it was reasonable for defense counsel not to seek exclusion of the videotape under § 710.30.

Third, Petitioner argues that the prosecution failed to serve him with notice of their intention to introduce the videotape at trial, pursuant to N.Y.C.P.L. § 240.20, but the evidence does not support this claim.  On September 25, 2006, before the start of the *Dunaway/Wade/Gethers* hearing, the prosecution provided petitioner with *Rosario* material. (Dkt. 10-1 at ECF 11).  The prosecution then turned over a copy of the videotapes on September 28, 2006, months before Petitioner's march 2007 trial.  *Id.*  Thus, trial counsel's decision not to

---

[10] Although the surveillance videotape had an audio component, no statements by Petitioner were recorded on it.  Rather, Det. Baptiste is heard on the videotape communicating with members of his field team.  (Dkt. 10-5 at 408).

move to suppress the material on these grounds was reasonable, as the prosecution did in fact provide Petitioner with notice.

Finally, Petitioner claims that his trial attorney was ineffective for failing to disclose *Rosario* material.  But Petitioner merely makes this blanket assertion without any specific reference to the *Rosario* material.  And, as previously noted, the surveillance videotape of him entering and exiting UC 7988's car did not constitute Rosario material.[11]  Thus, there was no actual *Rosario* violation for Petitioner's trial counsel to pursue, and his decision not to raise this issue was reasonable.

For the reasons stated above, Petitioner could not have obtained suppression of the surveillance videotape or its exclusion from evidence.  Accordingly, Petitioner will not suffer any prejudice from the non-review of his ineffective assistance of trial counsel claim because it is meritless.  The claim is thus procedurally barred from this Court's review.

C.   Ineffective Assistance of Appellate Counsel (Grounds 3 and 4)

Finally, Petitioner argues that his appellate counsel provided ineffective assistance by failing to argue that: (1) the firearm sold to UC 7988 was improperly entered into evidence because the prosecution did not establish a chain of custody for the gun; (2) the prosecution failed to disclose *Rosario* material; (3) the prosecution failed to serve notice, pursuant to N.Y.C.P.L. § 710.30, of their intention to introduce the surveillance  videotape of Petitioner entering and exiting the UC's car at trial; (4) Petitioner's right to privacy was violated by the warrantless videotape recording of him; and (5) trial counsel was ineffective for not seeking to

---

[11] The New York Court of Appeals held in *People v. Rosario*, that a defendant is entitled to inspect the prior *statements* of a prosecution witness prior to cross-examination.  *Flores v. Demski*, 215 F.3d 293, 300 (2d Cir. 2000) (citing *People v. Ranghelle*, 69 N.Y.2d 56, 62, (2d Cir.1986)) (quoting *Rosario*, 9 N.Y.2d  286, 289 (2d Cir. 1961)).  Thus, the surveillance videotape, which does not contain any statements by Petitioner, does not constitute *Rosario* material.

suppress the surveillance videotape on the grounds that (a) the prosecution withheld *Rosario* material, in violation of N.Y.C.P.L. § 240.20, and (b) the prosecution failed to obtain a video surveillance warrant pursuant to N.Y.C.P.L. §§ 700 and 710.30 (Dkt. 9 at ECF 31; *see also* Dkt. 10-1 at ECF 39-45).  Petitioner previously raised these claims in his two applications for a writ of error coram nobis. These claims are both exhausted and not procedurally barred.

The Appellate Division denied both of Petitioner's applications on the merits.  *See People v. Brown*, 85 A.D.3d 1196 (2d Dept. 2011). The state court's decision is thus entitled to deference under AEDPA.  28 U.S.C. 2254(d).

### i.  *Strickland Standard for Ineffective Assistance*

In *Strickland v. Washington*, the Supreme Court recognized that an accused person has the right not only to counsel, but to the effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  However, in effecting this goal, the Court also noted that great deference must be given to counsel in making ". . . independent decisions about how to conduct the defense."  *Id.* (citing *Geders v. United States*, 425 U.S. 80, 96 (1996)).  Thus, to succeed on a claim of ineffective assistance of counsel, a Petitioner must demonstrate that: (1) his counsel performed below an objective standard of reasonableness and (2) a "reasonable probability" that this sub-par performance prejudiced his defense.  *Strickland*, 466 U.S. at 687–94.  With respect to the second prong, to show that the attorney's errors were prejudicial, "the [P]etitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694 (internal quotations omitted). Without both of these requirements, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the trial unreliable."  *Id.* at 686.

ii.    *Application of Strickland*

Petitioner first challenges his appellate counsel's performance on the ground that she failed to appeal the trial court's admission of a firearm for which no chain of custody was established.  (Dkt. 1-3 at ECF 25).  Petitioner bases this contention on the fact that the UC 7988's shield number was not on the weapon despite Det. Baptiste testifying at trial that he had scratched it onto the weapon.  *Id.* at 26-27.

The Appellate Division denied this ineffectiveness claim, which was raised in Petitioner's First Coram Nobis Application, finding that appellate counsel was not ineffective in this regard. This decision was neither an unreasonable application of *Strickland* or an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  At trial, the presiding judge considered the defense counsel's objection on this ground and nevertheless concluded that it should be overruled because chain of custody for the firearm had been established by other means.  (Dkt. 10-5 at 402).  Among these "other means" was Det. Baptiste's testimony that he received the firearm in question and vouchered it when he reached the precinct.  (Dkt. 10).  The firearm that was admitted at trial was the same firearm that had been vouchered by Det. Baptiste.  (Dkt. 1-3 at. ECF 26-27).  Moreover, UC 7988's testimony that he recognized the firearm as the one he purchased from Petitioner further substantiates the trial judge's finding that chain of custody had been established.  (Dkt. 1-3 at ECF 26).  Despite Petitioner's contentions, such evidence is sufficient to establish chain of custody.[12]

While Petitioner points to the discrepancy between Det. Baptiste's testimony about etching his UC number on the gun and the absence of the number on the gun at the time of trial

---

[12] 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 901.03[3] at 901–929 (Joseph M. McLaughlin ed.) (2d Ed.2010) ("The chain of custody for evidence does not need to be perfect in order to establish the evidence's authenticity . . . [t]he trial court may admit evidence if it determines, after considering the nature of the evidence and the surrounding circumstances, that the evidence is substantially in the same condition as when it was first gathered.").

(Dkt. 1-3 at ECF 27), the jury resolved that discrepancy in the prosecution's favor, and this Court should not disturb that determination. *See Boulware v. Brown*, 10 Civ. 9163 (DAB) (JLC), 2011 U.S. Dist. LEXIS 77826, at *29 (S.D.N.Y. July 19, 2011) ("It is squarely within the province of the jury to make these credibility determinations . . . ."); *Black v. Conway*, 11 Civ. 0480 (GBD) (AJP), 2011 U.S. Dist. LEXIS 70838, at *33-34 (S.D.N.Y. June 30, 2011) ("The law is well established that questions of witness credibility are jury questions and a federal habeas court may not reassess the jury's finding of credibility.") (collecting cases). It was, therefore, not unreasonable for the Appellate Division to conclude that appellate counsel's decision not to appeal the firearm's admission was not ineffective assistance of counsel.

In her response to the 440 Motion, Petitioner's appellate counsel stated that she made a tactical decision not to raise the firearm issue based on her belief that there was no chain of custody issue.  (Dkt. 10 at 3).  Petitioner's appellate counsel also did not believe that raising the issue would have benefited Petitioner because it would not have lessened his sentence. *Id.*  Such a decision to refrain from making a frivolous claim, and thereby risk detracting from potentially meritorious claims, cannot be deemed unreasonable. *Strickland,* 466 U.S. at 690 ("the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").  As such, Petitioner has failed to satisfy the first prong of the *Strickland* standard, *i.e.*, that his appellate counsel's performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 686.

Petitioner has also failed to satisfy the second prong of the *Strickland* standard by failing to show that the outcome of his appeal would have been different had the chain of custody issue been raised on appeal.   Given the deference accorded to the trial court in ruling on the

admissibility of the firearm,[13] Petitioner cannot demonstrate that challenging that ruling on appeal would have resulted in his appeal being granted.

Petitioner's remaining contentions are unsupported by the record and do not sufficiently call into question appellate counsel's performance. As previously discussed, neither Petitioner's contention that he received no notice of the prosecution's intent to use the surveillance videotape at trial, nor his contention that the videotape was not disclosed to the defense before trial, is supported by the record.  *See supra* at 19-21; Dkt. 10-1 at ECF 11; *see also* Dkt. 9 at 29. Because Petitioner's ineffective assistance of trial counsel claim is entirely meritless, appellate counsel's decision not to argue this claim on appeal was reasonable and tactical, as it had little to no chance of success.  Appellate counsel cannot be found ineffective on this ground.

Accordingly, because Petitioner's claims regarding the ineffectiveness of his appellate counsel are wholly without merit, the Appellate Division's decision to deny these claims was not an unreasonable application of federal law, nor did it constitute an unreasonable determination of the facts in light of the evidence presented at trial.

## CONCLUSION

For the foregoing reasons, the Court finds that the Petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied.  The Clerk of the Court shall enter judgment accordingly and terminate this case. Because Petitioner has not made a substantial showing of the denial of any constitutional right,

---

[13] In *Strickland*, the Supreme Court acknowledged that "[i]n making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law."  The Court also held that "[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.  *Strickland*, 466 U.S. at 694.

no certificate of appealability will be issued.  28 U.S.C. § 2253; *see Slack v. McDaniel*, 529 U.S. 473 (2005).  The Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED:

_____/s/_____
PAMELA K. CHEN
United States District Judge

Dated: February 4, 2014
      Brooklyn, New York

25